**CHICKASAW CLUB, INC., Plaintiff-Appellee,**

v.

**UNITED STATES of America, Defendant-Appellant.**

No. 71-3638.

United States Court of Appeals, Fifth Circuit.

July 20, 1972.

Scott P. Crampton, Asst. Atty. Gen., Meyer Rothwacks, Atty., Tax Div., Dept. of Justice, Washington, D. C., William J. Schloth, U. S. Atty., Charles T. Erion, Asst. U. S. Atty., Macon, Ga., Bennet N. Hollander, Jane M. Edmisten, Attys., Tax Div., Dept. of Justice, Washington, D. C., for defendant-appellant.

William C. Moore, Owen G. Roberts, Jr., Columbus, Ga., Roberts & Kilpatrick, Columbus, Ga., for plaintiff-appellee.

Before WISDOM and INGRAHAM, Circuit Judges, and BOOTLE, District Judge.

PER CURIAM:

In this action by the government for 1964 cabaret taxes there is a total lack of evidence to support the contention of the taxpayer (Chickasaw Club, Inc.) that it was a private club instead of a three-man venture providing public performances for profit. 26 U.S.C. § 4231(6). We are compelled therefore to hold that the district court erred in not granting the government's motion for a judgment notwithstanding the verdict. We reach this conclusion well aware of the necessity that we should view the facts and inferences in the light most favorable to the nonmover. Boeing Co. v. Shipman, 5 Cir. 1969, 411 F.2d 365. Perhaps the repeal of the cabaret taxes influenced the jury. In any event, the facts point so strongly in favor of the moving party that reasonable men could not have arrived at a verdict that the taxpayer was a private club.

Under its original incorporation in Columbus, Georgia, in 1933, Chickasaw Club, Inc., was a nonstock, nonprofit corporation. The by-laws vested operational control in an executive committee

to be elected by the membership. In practice, however, the club has always been run as a profit-making venture by certain individuals who invariably have comprised the executive committee. One of the reasons for operating taxpayer as a "private club" was to circumvent certain provisions of Georgia law prohibiting the sale of liquor by the drink in public places.

In 1963, A. W. Forgione, a retired Army officer, Donald McNally, and Richard Spelman made a loan to the taxpayer of $24,000 and each received in return a note for $8,000. The funds so raised were used to purchase the operating assets of taxpayer. The assets were of minimal value, but the investors purchased them in order to obtain control over taxpayer's charter as a private club, since such charters were no longer available. Later, the investors made additional loans of over $70,000 to the taxpayer for remodeling and for operating expenses.

After purchasing the taxpayer's assets, the investors met and appointed themselves as the executive committee, and then elected themselves as its officers, with Mr. Forgione serving as president. No other election of officers ever occurred.

In December 1963 the investors held an open house for three days for local residents who were invited to become members of Chickasaw Club. Within a short time, some 600 persons had paid $25 each for lifetime memberships, and had received metal medallions denoting their status as charter members. Beginning in February 1964 additional persons began being admitted as regular members. In addition to the regular $25 membership, the taxpayer offered a $10 associate membership (evidenced by a membership card) to persons living out of town, and a $2 temporary membership (also evidenced by a card) to persons on temporary duty nearby at Fort Benning.

Under the taxpayer's by-laws, new members were to be sponsored by current members and their applications were to be approved by a vote of the executive committee. In practice, however, most of the applications and referrals were passed upon by Mr. Forgione acting alone. New members were obtained in several ways, for example, by invitation of the investors, by referral of a current member, or by filling out an application. The Club placed advertisements for membership in the public media. Membership was never limited to a fixed number, either under the Club's by-laws or otherwise. There were no qualifications for membership in the Club. Almost anyone could become a member, and very few, if any, applicants were denied membership. The Club served no purpose for its members aside from being a place where they could obtain meals, drinks, and listen to music or dance.

The Club was operated under the direction of the executive committee, with Mr. Forgione making most of the decisions in his capacity as president and executive manager. The Club membership never met as a body, never held an election of officers, never established committees, never established any rules and regulations, never approved the Club's by-laws, and never received a financial report.

During the year in issue, the Club sustained a financial loss, which the investors reported on a partnership return and claimed on their individual income tax returns.

In short, the taxpayer had no meaningful restrictions on membership more severe than those imposed by respectable places of entertainment or restaurants. Nor were there any meaningful privileges of membership. Membership merely entitled persons to enter the Club, purchase food and drink, and dance. Members had no role in the operation of the Club. All the control was exercised by the three investors, who alone constituted the executive committee, who alone held office in the club, and who alone were entitled to its prof-

its. In fact, the members of taxpayer had nothing more than the privilege of patronizing the Club, just as they might patronize any public business establishment. Therefore, taxpayer could not be held exempt from the cabaret tax imposed under Section 4231(6) of the Code.

The judgment is reversed with directions that the district court render judgment for the United States on its motion for a judgment notwithstanding the verdict.

Reversed with directions.